Jerald KENDRICK, et al., Plaintiffs-Appellees, Cross-Appellants,

v.

David BLAND, et al., Defendants-Appellants, Cross-Appellees,

United States of America, Amicus Curiae.

Nos. 82–5499, 82–5604.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 29, 1983.

Decided July 27, 1984.

Barbara W. Jones (argued), Linda G. Cooper, Frankfort, Ky., Shawn Moore U.S. Dept. of Justice, Civil Rights Division, Washington, D.C., for defendants-appellants, cross-appellees.

Patricia G. Walker [LEAD] (argued), Gittleman & Barber, Oliver H. Barber, Jr., Thomas J. Banaaszynski, Louisville, Ky., Christine A. Freeman, Southern Prisoner's Defense Committee, Atlanta, Ga., for plaintiffs-appellees, cross-appellants.

Before EDWARDS and KRUPANSKY, Circuit Judges, and FAIRCHILD *, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Jerald Kendrick and other incarcerates of the Kentucky State Penitentiary (KSP) at Eddyville, Kentucky, initiated this class action under 42 U.S.C. section 1983 on September 8, 1976 against various administrators, correctional officers and employees of KSP seeking, *inter alia*, injunctive and declaratory relief from conditions allegedly in violation of the Eighth Amendment's proscription against cruel and unusual punishment, as applied to the states through the Fourteenth Amendment.[1] *Rhodes v. Chap-*

---

* Hon. Thomas Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The detailed and lengthy pleading challenged conditions at KSP in areas of overcrowding, housing conditions, sanitation, rehabilitation, access to the courts, classification, segregation,

*man,* 452 U.S. 337, 344–45, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981); *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962). The class was certified under Rule 23(b)(2), Fed.R. Civ.Pro., as those "persons presently confined in the Kentucky State Penitentiary, and those who may be so confined in the future". The United States of America intervened on behalf of the plaintiff class.

■ During several years following initiation of this action, the parties, under the astute guidance of the district court, exhibited a commendable spirit of cooperation designed to rectify the practices, policies and conditions joined in the complaint as constitutionally infirm. Innumerable hearings, conferences and visitations to KSP were conducted by the district court during this period. The district court's extended involvement and intimate understanding of the facts and issues joined in this action demand that its factual findings are to be afforded extreme deference. *Hutto v. Finney,* 437 U.S. 678, 688, 98 S.Ct. 2565, 2572, 57 L.Ed.2d 522 (1978); Rule 52, Fed.R.Civ. Pro.

Following hearings on September 23 and November 30, 1979, at which inmates and corrections personnel testified, the district court by order dated March 20, 1980, preliminarily enjoined defendants from exercising the use of unnecessary physical force, mace and/or restraints on the inmates, as violative of the Eighth Amendment. On May 28, 1980, approximately two months subsequent to the issuance of this preliminary injunction, a detailed Consent Decree negotiated by the parties was approved by the court. This Decree resolved the vast majority of controverted issues except issues of brutality and harassment which were expressly excluded.

On July 22, 1980, the parties filed a Supplemental Partial Consent Decree. Therein defendants agreed that the preliminary injunction of March 20, 1980 be made permanent. The Supplemental Decree detailed the procedure by which the parties sought

violence, food and medical care, mail, personal

to eliminate alleged exercises of guard brutality. It contemplated development of a selection and monitoring process to be implemented for the hiring of non-clerical correctional personnel which was to include the following: psychological testing; general guidelines for interviewing of applicants; a formal evaluation of the personnel within 90 days of employment; termination of those individuals determined to be unfit after completing the selection process. It further contemplated extensive training of existing personnel. The Supplemental Decree also proscribed against harassment and arbitrary action by the defendants:

The defendants agree that there shall be no use of physical force, chemical or mechanical restraints, except when the inmate poses a danger to self or others. Further, there shall be no arbitrary, unnecessary, or excessive physical intrusions of an inmate or his property, or removal of property without a receipt; nor any verbal abuse, *harassment (including threats of discipline or write-ups), or arbitrariness in dealing with inmates or their property,* on the part of correctional personnel. The defendants agree to comply with the applicable ACA standards regarding the use of mace including Sections 4165–4171. In addition, the defendants agree to utilize the following guidelines and procedures for the use of mace, restraints, use of force, and shakedowns of inmates and inmate cells, effective upon the entry of the Consent Decree...[thereafter follow detailed guidelines].

Although the Supplemental Decree fully resolved issues of brutality and parenthetically proscribed against harassment of inmates by the defendants, the plaintiff class moved for (1) a declaration that the Constitutional rights of the KSP class had been violated by a pattern of guard harassment of inmates and (2) an injunction ordering the discharge of Senior Captain (now Major) Robert Hendricks (Hendricks), Captain William Henderson (Henderson) and Cap-

property, visitation, parole and other matters.

tain William Ashley (Ashley). During the week of July 21–25, 1980 the district court conducted hearings at which numerous inmates and correctional personnel testified. The court was precluded from issuing a prompt decision because of delays experienced in preparation of the transcript. However, several months later, on October 24, 1980, the court adjudged from the bench that "a preliminary finding of an unacceptable pattern of harassment has been made". Post-trial briefs were requested from the parties "with an emphasis on the problem of remedies."

On November 11, 1981, approximately a year later, the district court in a memorandum opinion concluded that a pattern and practice of harassment existed at KSP. The opinion noted an abusive and coercive informant system whereby inmates were required upon demand to provide information concerning potential institutional infractions by either inmates or guards at the risk of suffering retaliation for failure to cooperate. The court's memorandum opinion also generalized the operation of the Special Needs Unit wherein untrained guards unnecessarily and wantonly inflicted pain upon mentally ill inmates through the use of excessive force. Defendant's implementation of an informant system and operation of the Special Needs Unit were both adjudged to infringe the Eighth and Fourteenth Amendments. The court, however, refused to grant plaintiff's motion for an injunction discharging Hendricks, Ashley and Henderson and addressed the request for relief in the following language:

The Court is not persuaded that the relief requested by plaintiffs—an order requiring the dismissal of Major Hendricks, and Captains Henderson and Ashley—would remedy the conditions which gave rise to the problems discerned by the Court. * * * [P]ursuant to the Supplemental Partial Consent Decree § 3(c), defendants agreed to implement, a "formal evaluation process of non-clerical correctional personnel job performance [to determine continued] fitness to work with a correctional institution." The information gathered from this process

must be submitted to the Court before any further action regarding the three guards in question.

The district court envisioned the discharge of Hendricks, Henderson and Ashley as a constitutionally permissible remedy upon a finding of fact that these correctional officers had engaged in conduct violative of inmates' Eighth Amendment guarantee. The court, however, reserved implementation of this remedy pending additional information concerning the guards' fitness to work.

By July 23, 1982, almost eight months subsequent to the foregoing order of November 11, 1981, the defendants had not submitted the "formal evaluation" of Hendricks, Ashley and Henderson as directed by the court's prior order. The court was informed, and accepted, defendants' representation that defendant's failure to evolve the evaluations resulted from circumstances beyond their control.

On July 23, 1982, the following memorandum and order were entered:

For the reasons stated in the memorandum opinion dated November 11, 1981 (incorporated heren [sic] by reference), the Court is convinced that steps must be taken to ensure that the occurrences outlined in the Court's findings of fact will not be repeated. The Court finds that the least intrusive method of accomplishing this goal is the removal of these officers from the Adjustment Committee and prohibiting them from serving on any institutional committee, or in any capacity, which requires them to act in a quasi-judicial manner involving inmates and the institution. The court finds that this action is necessary to prevent abuses of the disciplinary process of the kind outlined in the findings of fact, and that with this accomplished, the internal grievance procedure will be better able to operate in a manner that will help check other abuses condemned by the court. The Court further finds that the three officers in question are disqualified from service on the Adjustment Commit-

tee under Section 6(3) of the Consent Decree, which requires an "impartial panel."

Accordingly, the Court's order dated November 11, 1981 is amended to include the following directive:

> Until further orders of the Court, Major Hendricks and Captains Ashley and Henderson are hereby disqualified from serving on the Adjustment Committee pursuant to the requirements of Section 6(3) of the Consent Decree, and they are further disqualified from any institutional function which requires them to act in a quasi-adjudicatory capacity involving inmates at the institution. Defendants are directed to remove these officers from any function prohibited by this paragraph forthwith.

Accordingly, the district court predicated its disqualification of Hendricks, Ashley and Henderson from serving on the Adjustment Committee upon (1) the findings of its November 11, 1981 Order, *i.e.*, upon a finding of a pattern and practice of unconstitutional harassment by individuals including named three officers and (2) upon finding that the named three individuals were not impartial and thus disqualified from serving under the Consent Decree. The court's disqualification of the named officers from any institutional function which required them to act in a quasi-adjudicatory capacity involving inmates at the institution was predicated solely upon the court's conclusion that the three named individuals had infringed the Eighth Amendment rights of certain inmates. The court's July 23, 1982 order amending its order of November 11, 1981, was certified as final and appealable. Rule 54(b), Fed.R.Civ.Pro. Motions for stays of execution were denied by both the district court and by this court. Defendants filed a timely notice of appeal which challenged the district court's factual findings and assigned as error the imposition of an over-intrusive remedy beyond the

court's authority. Plaintiffs filed a notice of cross-appeal, supporting the court's factual findings and challenging the court's refusal to order the discharge of the three officers.

 On appeal, Hendricks, Henderson, and Ashley submit that the district court's finding that they, individually or collectively, engaged in a pattern of harassment is clearly erroneous in the absence of direct evidence in the record manifesting a protracted course of conduct directly involving these named officers, either individually or collectively, in a series of identifiable incidents that could be properly characterized as a "pattern of harassment" against inmates. Although the trial court made no specific finding as against the above named individuals, it did find that an "unacceptable pattern of harassment" prevailed at the institution. This specific finding of fact is supported by the evidence of record and is therefore not clearly erroneous.

When viewed in its entirety, the record discloses that the conduct of correctional officers generally at KSP reflected a pattern and practice of unconstitutional harassment. The evidence supporting these findings, as articulated in the record of testimony, was, at best, vague and conclusorily developed without establishing timeframes, specific incidents or identities of correctional officers responsible for charged infringements. The generalized and conclusory testimony is of sufficient weight, however, to support the trial court's specific finding that a pattern and practice of harassment was implemented by correctional personnel generally but such evidence was not of sufficient weight to support the relief granted the plaintiff as against the three named officers even though these officers may, along with other named and unnamed correctional personnel, have been participants in the charged offenses which violated the Eighth Amendment.[2] This pattern and practice of brutal-

---

**2.** This sentence reflects the settled view of the author of this opinion. It does not correspond, however, to findings of Judges Edwards and Fairchild. Their view of this record convinces

them that the district judge's findings as to officers Henderson and Ashley were not clearly erroneous. Their concurrence with the balance oᶠ this opinion and its conclusion is based upon

ity and harassment by prison officials generally violates the Constitution. *See Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir.1982); *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

■■■■ The pertinent appellate inquiry confronting this court is whether the district court breached precepts of comity and federalism by restricting the responsibilities and duties of the three officers here in issue. It is fundamental that the federal forum, as the ultimate guardian of constitutional rights, possesses the authority to implement whatever remedy is necessary to rectify constitutionally infirm practices, policies or conduct. *State of Washington v. Washington State Commercial Passenger Fishing Vessel Association*, 443 U.S. 658, 695–96, 99 S.Ct. 3055, 3079–80, 61 L.Ed.2d 823 (1979); *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Milliken v. Bradley*, 433 U.S. 267, 280–81, 97 S.Ct. 2749, 2757, 53 L.Ed.2d 745 (1977); *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1275–76, 28 L.Ed.2d 554 (1971); *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). This broad, equitable authority, however, is tempered by precepts of comity and federalism. As the Supreme Court has stated:

> [A]ppropriate consideration must be given to principles of federalism in determining the availability *and scope* of equitable relief.

*Rizzo v. Goode*, 423 U.S. 362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976). The restraints of federalism must be applied not only when an injunction is sought against the judicial branch of state government, but also when an injunction is urged "against those in charge of an executive branch of any agency of state and local government [ ]". *Id.*, 423 U.S. at 380, 96 S.Ct. at 608. Thus the federal equity court in fashioning a remedy must afford relief

which is "no broader than necessary to remedy the constitutional violation". *Newman v. State of Alabama*, 683 F.2d 1312, 1319 (11th Cir.1982). *See also Dayton Board of Education v. Brinkman*, 433 U.S. 406, 419–20, 97 S.Ct. 2766, 2775, 53 L.Ed.2d 851, 862–63 (1977); *Hills v. Gautreaux*, 425 U.S. 284, 293–94, 96 S.Ct. 1538, 1544–45, 47 L.Ed.2d 792, 801 (1976) *Ruiz v. Estelle*, 679 F.2d 1115, 1145 (5th Cir.1982) *vacated in part on other grounds*, 688 F.2d 266, (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983) ("We should, therefore, fashion 'the least intrusive remedy that will still be effective' "); *Newman v. State of Alabama*, 559 F.2d 283, 287 (5th Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978).

These underlying and restrictive principles of comity and federalism are perhaps nowhere more compelling than in actions seeking relief against unconstitutional practices, policies and conduct manifest in state penal institutions. The rationale was articulated by the Supreme Court more than a decade ago:

> It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons. * * * The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons.

*Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 93 S.Ct. 1827, 1937–38, 36 L.Ed.2d 439 (1973) (holding that a state prisoner may not circumvent exhaustion requirements of the habeas corpus laws by framing an action challenging the fact or duration of his physical imprisonment under 42 U.S.C. § 1983). *See also Hewitt v. Helms*, 459

"the least intrusive remedy" doctrine as applied to, and disclosed by the facts and circumstances of the case.

U.S. 460, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983); *Rhodes v. Chapman,* 452 U.S. 337, 349 n. 14, 101 S.Ct. 2392, 2400 n. 14, 69 L.Ed.2d 59 (1981); *Procunier v. Martinez,* 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974).[3] Federal restraint into intrusion of a state penal institution is counseled for at least two reasons:

> [J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the providence of the Legislative and Executive Branches of our Government not the Judicial.

*Bell v. Wolfish,* 441 U.S. 520, 548, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979); *Arruda v. Fair,* 710 F.2d 886 (1st Cir.1983). *See also: Sampson v. King,* 693 F.2d 566 (5th Cir.1982); *Newman v. State of Alabama,* 683 F.2d 1312, 1320 (11th Cir.1982).

▮▮▮ Accordingly, it was incumbent upon the district court in the action *sub judice* to impose the least intrusive remedy available. In a factually similar case the Ninth Circuit has articulated that:

> [T]he remedy may be only so much as is required to correct the specification. A remedy may go beyond this only when there is a record of past constitutional violations and violations of past court orders.

*Hoptowit v. Ray,* 682 F.2d 1237, 1247 (9th Cir.1982). *See also Newman v. State of Alabama,* 683 F.2d 1312, 1319 (11th Cir. 1982); *Ruiz v. Estelle,* 679 F.2d 1115, 1145 (5th Cir.1982), *vacated in part on other grounds,* 688 F.2d 266 (5th Cir.1982), *cert.*

*denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795, (1983); *Newman v. State of Alabama,* 559 F.2d 283, 288 (5th Cir.1977), *affirmed sub nom Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) ("less intrusive, but equally effective, measures should have been taken by the District Court"). Minimally intrusive relief may assume the form of an order enjoining a continuation of the practices, policies or conditions adjudged as constitutionally infirm whereby the state authority is charged with the responsibility of developing a program to safeguard against abridgement of constitutional rights in the future. *Preiser v. Rodriguez,* 411 U.S. 475, 499, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439, 455 (1973); *Cook v. Hanberry,* 596 F.2d 658 (5th Cir.1979), *cert. denied,* 442 U.S. 932, 99 S.Ct. 2866, 61 L.Ed.2d 301 (1979). Such an injunction may be attended by the appointment of a monitor with authority to observe defendants' conduct and thereby permit the federal court to oversee compliance with its continuing order. *See Ruiz v. Estelle, supra,* 679 F.2d at 1161; *Campbell v. McGruder,* 580 F.2d 521, 544 (D.C.Cir.1978) (monitor); *Miller v. Carson,* 563 F.2d 741, 753 (5th Cir.1977) (ombudsman appointed to "observe conditions at the jail and report his observations to the trial court to assure compliance with the trial courts' orders"); [4] *Newman v. State of Alabama, supra,* 559 F.2d at 290 (remanded for appointment of monitors with authority to observe, but not intervene in, daily prison operations); *Gates v. Collier,* 501 F.2d 1291 (5th Cir.1974) (injunction against unconstitutional practices in state penal system with appointment of a monitor to determine degree of compli-

---

**3.** "Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody * * * Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. * * * For all of these reasons, courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial rec-

ognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities". [footnote omitted].

**4.** The court added:

> The ombudsman, however, like the monitor, should have "no authority to intervene in daily prison operations". He is an arm of the court rather than an independent agent.

ance with court orders); *Inmates of the Attica Correctional Facility v. Rockefeller,* 453 F.2d 12, 25 (2d Cir.1971) (District court erred in not granting a preliminary injunction against guard brutality and harassment; remanded for injunction and to consider appointment of federal monitors); *Hamilton v. Landrieu,* 351 F.Supp. 549, 552 (E.D.La.1972) (ombudsman). In the event that the state fails to avail itself of the deferential opportunity to correct its constitutional defects with minimal federal intrusion, the federal court may implement a more intrusive remedy:

> [S]tate and local authorities have primary responsibility for curing constitutional violations. "If, however '[those] authorities fail in their affirmative obligations ... judicial authority may be invoked.' *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554. Once invoked, 'the scope of a district court's equitable power to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies' ".

*Hutto v. Finney,* 437 U.S. 678, 688 n. 9, 98 S.Ct. 2565, 2572 n. 9, 57 L.Ed.2d 522 (1979) (Supreme Court approved of district court's specific remedy of 30 day maximum period for inmates in segregation given "the long and unhappy history of the litigation" including defendants' failure to comply with the district court's past orders). *See also Ruiz v. Estelle, supra,* 679 F.2d at 1145–46 ("[T]he remedy should begin with what is absolutely necessary. If those measures later prove ineffective, more stringent ones should be considered").

█ Contempt proceedings are also available to the federal court to assure compliance with its orders. *See Newman v. State of Alabama,* 683 F.2d 1312, 1318 (11th Cir.1982) ("The plaintiffs, if they think the State is failing to take the action required ... can initiate contempt proceedings"); *Vazquez v. Gray,* 523 F.Supp. 1359 (S.D.N.Y.1981).

█ Confronting the action *sub judice,* this court adjudges that the district court breached fundamental principles of federal-

ism and exceeded its authority by enjoining Hendricks, Henderson and Ashley from performing certain responsibilities of employment which had been delegated them by the state. This remedy, while temporarily pragmatic, was not the least intrusive available.

Implementation of the least intrusive remedy is particularly compelling in the case at bar since the defendants have exhibited a history of cooperation and good faith demonstrated by the comprehensive Consent Decree rectifying myriad practices, policies and conduct alleged to have been unconstitutional. Given this history, it must be assumed that the state will continue to act in good faith to alleviate unconstitutional harassment and to comply with the order enjoining such conduct. As the Supreme Court has observed:

> In discharging this ... responsibility [to protect constitutional rights of inmates], however, courts cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system.

*Rhodes v. Chapman,* 452 U.S. 337, 352, 101 S.Ct. 2392, 2402, 69 L.Ed.2d 59 (1981).

█ Bona fide steps that prison officials have or are taking to correct substandard prison conditions should be considered by the federal court in fashioning relief. *Hoptowit v. Ray,* 682 F.2d 1237, 1247 (9th Cir.1982). The Supplemental Partial Consent Decree, discussed heretofore, expressly and comprehensively enjoined brutality and parenthetically proscribed against harassment, and specific practices and procedures designed to insure against such past occurences and conduct. The existence of such a decree significantly diminishes the need for a specific and highly intrusive remedy such as that entered against Hendricks, Henderson and Ashley by the district court. *Newman v. State of Alabama,* 683 F.2d 1312, 1321 (11th Cir. 1982). Indeed, the conditions of the Supplemental Decree, entered in July of 1980,

440

had been fully honored by defendants as of July 23, 1982, when the district court entered the instant remedial order. Upon adjudging that the remedy implemented by the district court exceeded permissible authority of the trial court, the plaintiffs' cross-appeal premised upon the charge that the district court erred in refusing to discharge the three correctional officers must axiomatically fail.[5]

Accordingly, the July 23, 1982 Order of the district court is REVERSED to the extent that it implemented, as a remedy for Eighth Amendment violations, relief disqualifying Hendricks, Henderson and Ashley from serving on the Adjustment Committee and from participating in any institutional function which requires them individually or collectively to act in a quasi-adjudicatory capacity involving inmates at the institution.[6] This action is REMANDED with instructions to implement the least intrusive remedy available. Acknowledging the continuing duty of the district court to require adherence to the Constitution of the United States, upon remand, the district judge may evaluate any conduct subsequent to the closing of the record, which is presently here for appellate review, and make any necessary reevaluation based on any change of circumstances which may be shown. Before prohibiting or limiting the assignment of any prison personnel as to any particular job or position, however, the district court should enter specific findings of fact and conclusions of law upon which its orders are predicated reflecting that the remedy imposed is the least intrusive remedy available in light of the existing facts and circumstances.

5. This Court need not address the inquiry of whether a federal court sitting in equity could, under even the most egregious circumstances, implement the drastic and highly intrusive remedy of ordering the discharge of a state employee. The Fifth Circuit has referenced this inquiry, in dicta, as follows:

We all understand, of course, that federal courts have no authority to address state officials out of office or to fire state employees or to take over the performance of their functions. Most assuredly, however, in proper cases a federal court can, and must, compel

state officials or employees to perform their official duties in compliance with the Constitution of the United States.

*Newman v. State of Alabama,* 559 F.2d 283 (5th Cir.1977) *affirmed sub nom. Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Cited with approval in *Newman v. State of Alabama,* 683 F.2d 1312, 1321 (11th Cir.1982) (dicta).

6. This opinion does not affect the district court's Order to the extent that its remedy is predicated upon Section 6(3) of the Consent Decree.