Lawrence R. ALBERTI, et al.

v.

Johnny KLEVENHAGEN, Sheriff of
Harris County, Texas, et al.

Civ. A. No. 72–H–1094.

United States District Court,
S.D. Texas,
Houston Division.

May 24, 1985.

Jim Oitzinger, Houston, Tex., for plaintiffs.

Roderick Lawrence, Asst. Co. Atty., Houston, Tex., for defendant Com'rs Court.

Ray Speece, Asst. Dist. Atty., Houston, Tex., for defendant Sheriff.

## ORDER

CARL O. BUE, Jr., District Judge.

Pending before the Court is plaintiffs' second motion for contempt in which plaintiffs contend that the Sheriff and Commissioners Court of Harris County have failed to comply with the Court's Order of December 18, 1984, 600 F.Supp. 443, (hereinafter "the December 1984 Order") directing the defendants to adhere to its staffing plan and post orders on frequency of observation of inmates.[1] In response to the plaintiffs' contempt motion, the Sheriff argues that he has attempted to comply with the spirit, if not the letter, of the December 1984 Order and will continue to do so. The County Commissioners contend that they have complied with the spirit of the Court's Order to provide a constitutionally safe and suitable jail and have no intention to come into literal compliance with the staffing requirements until they are convinced that the staffing levels now existing at the jails are unconstitutional.[2]

While it would serve no useful purpose to present a detailed account of the hearings resulting in the December 1984 Order, the Court is of the view that a brief recapitulation of certain events transpiring since the entry of that order are necessary. On

---

1. Rather than reiterating itself, the Court will fully incorporate for all purposes in this Order, the Court's Orders of December 18, 1984 and April 9, 1985.

2. Additionally before the Court is plaintiffs' first amended motion to add parties in which plaintiffs request the Court to add as parties defend-

ant J.F. Flack, and Henry Kriegel, in their official capacities as Auditor and Treasurer, respectively, of Harris County. The Court will defer a ruling on this motion until it becomes clear that such joinder is required to ensure compliance with the Court's orders.

January 4 and January 11, 1985, defendants Klevenhagen and Harris County Commissioners Court, respectively, filed their notices of appeal of the Court's December 1984 Order on staffing which required full compliance on or about February 16, 1985. On February 5, 1985 and February 14, 1985, defendants Klevenhagen and Harris County Commissioners Court, respectively, filed with this Court their motions to stay the Court's December 1984 Order pending its appeal. However, this Court denied defendants' motions on April 9, 1985, 606 F.Supp. 478, and ordered that the defendants show cause at a hearing set for Friday, May 10, 1985 as to why they should not be adjudged to be in contempt. Shortly thereafter, defendants submitted to the Fifth Circuit Court of Appeals motions to stay the December 1984 Order which were denied on April 29, 1985. On May 6, 1985, Associate Justice Byron R. White of the United States Supreme Court denied the defendants' final application for a stay.

Accordingly, consistent with the Court's trial docket, a hearing was held in this case May 14, 1985, through May 16, 1985, to consider the narrow issue of defendants' contempt, if any, of the December 1984 Order. Having examined all of the evidence presented and pursuant to Rule 52(a) FED.R.CIV.P., the Court hereby enters its Findings of Fact and Conclusions of Law detailing the reasons for its conclusion that defendants are in civil contempt of the Court's Order and that plaintiffs should prevail.

## I.

### Findings of Fact

1. On or about December 27, 1984, the Commissioners Court, Sheriff Heard, and defendant Klevenhagen, along with legal counsel and others, met in an Executive Session and discussed the Court's December 1984 Order to determine how they should proceed in light thereof. Although all of the defendants denied knowing how many guards would be required in order to come into compliance with the Order, it was the consensus of those present that the Order should be appealed and that the defendants should fund and hire only sixty-five (65) additional guards for the Harris County jails.[3] By so doing, the defendants knowingly adopted the Cox plan, a course of action which they knew would not achieve compliance with the December 1984 Order. (Testimony of Judge Jon Lindsay; Commissioners Lee, Eckels, Fonteno, Lyons; and Sheriff Klevenhagen).

2. There was no testimony to suggest that defendants attempted to hire and put to work the number of guards necessary to comply with the Court's staffing plan but were unable to do so within the time period mandated by the Court. Rather, the testimony established that defendants believed that their motions to stay the December 1984 Order would be granted so that compliance therewith would not be required at this time. While realizing that they would not achieve compliance, defendants contended that they were conforming with "the spirit" of the Court's mandate "to provide a safe and suitable jail." (Testimony of Judge Jon Lindsay; Commissioners Lee, Eckels, Fonteno, Lyons; and Sheriff Klevenhagen).

3. On January 1, 1985, defendant Klevenhagen took office as the duly elected Sheriff of Harris County. By January 11, 1985, he had before the Commissioners Court a budget addendum request which included sixty-five (65) guard positions as well as forty-nine (49) additional training and support positions. If approved by the Commissioners Court, the Sheriff's request for guard positions would have resulted in the funding of approximately one hundred fourteen (114) supplemental guards for the housing floors of the Central Jail and Detention Center. (Testimony of Sheriff Klevenhagen, Plaintiffs' Exhibit No. 13). However, only sixty-five (65) guard positions were approved by the Commissioners Court, and the budget became effective on

---

**3.** This would provide forty-three (43) additional deputies and twenty-two (22) additional sergeants to be allocated between the Central Jail and Detention Center.

March 1, 1985. (Testimony of Judge Lindsay; Commissioners Lee, Eckels, Fonteno, Lyons; Sheriff Klevenhagen).

4. The Cox plan, consisting of forty-three (43) deputies and twenty-two (22) sergeants was fully implemented during the first weeks of May, 1985. This implementation results in a "6-6-5" post plan as compared to the Court's "9-9-7" post plan.[4] (Testimony of Captains Gaines and Anderson. Plaintiffs' Exhibit No. 28). However, racking-out which was recommended under the Cox plan for general use is employed on very rare occasions and only as a "semi-punitive" measure.[5] (Testimony of Captain Anderson). Additionally, defendants contended that they have, in the last month, implemented the Court's Order as it applies to inmate observation. As a result, it is represented that visual inspection of all cells is now conducted at least once per hour and is duly recorded. The remainder of the "Post Orders" as developed by the Heard administration are still in effect. (Testimony of Judge Lindsay; Captains Anderson and Gaines).

5. Defendant Klevenhagen contended that he and his staff have developed contingency plans which could be put into action in the event that he is required to comply with the Court's staffing requirements. He asserted that he has approximately seventy-five (75) applicants who are in the process of or have been screened for the guard positions; that the attrition rate of guards is very close to eight to ten guards per month; that he could transfer, on a temporary basis, additional staff to facilitate the screening process; that he could screen in the neighborhood of one hundred (100) additional reasonably well-qualified guards in eight to ten weeks; and that he would have no problem recruiting successfully for any necessary additional guards. He testified further that once the applicants are screened and the positions are funded by the Commissioners Court, the guards can be placed on the job immediately and given the one week "jail procedures course" as well as "on-the-job training" under the supervision of experienced officers. Within a reasonable time thereafter, the guards can attend the training academy and become certified peace officers. In sum, defendant Klevenhagen took the position that the Harris County jails have the capacity to assimilate into their systems one guard per floor per shift per month or a total of thirty-five to forty newly trained guards per month. Finally, while advancing no supporting facts or figures, Klevenhagen asserted that he is taking steps to reduce the population in the jails. (Testimony of Sheriff Klevenhagen; *see also* testimony of Captains Anderson and Gaines).

6. In contrast, defendant Commissioners Court has developed or adopted no contingency plan for coming into compliance with the December 1984 Order, although it held a special session to discuss the ramifications of the final denial of its motion to stay by the United States Supreme Court. For the most part, the Commissioners contended that they will not comply with the Court's Order on staffing until they are convinced that the numbers required thereby are constitutionally mandated. (Testimony of Judge Lindsay; Commissioners Lee, Eckels, Fonteno, and Lyons). More-

---

4. The Cox plan and the December 1984 Order with regard to the number of sergeants required are identical. Given that defendants have ostensibly funded and hired the number of sergeants recommended in the Cox plan, it follows that they are, at present, in compliance in this area with the Court's plan as well. However, Captain Anderson testified that as of the date of this hearing, he can fully staff only six or seven out of nine floors in the Central Jail according to the Court's Order as it applies to sergeants. Accordingly, the Court will continue to monitor the staffing of sergeants in the jail facilities until compliance is fully assured.

5. "Racking out" is a procedure discussed and recommended by Mr. Cox in his report. This procedure requires that mid to high risk inmates in multiple occupancy housing units be locked out of their sleeping cells during the daytime hours and forced to spend their time in the common dayroom. This procedure allows the guards to observe all inmates from the safety vestibule without the necessity of actually venturing into the dayroom to view the inmates who may be in their sleeping cells. (Plaintiffs' Exhibit No. 30 at pp. i. and 13).

over, neither the Sheriff nor any Commissioner has considered or put forth a request for additional guards subsequent to the denials of the motions to stay by all courts considering the issue. (Testimony of Judge Lindsay; Commissioners Lee, Eckels, Fonteno, Lyons; Sheriff Klevenhagen). Finally, Judge Lindsay testified that locating sufficient funds to comply with the Order is not a problem. As stated by Judge Lindsay, "money is not the issue."

## II.

### Conclusions of Law

■ The plaintiffs have moved for a finding of civil contempt as to the Sheriff and Commissioners Court for failure to comply with the Court's December 1984 Order. Failure to comply with an injunctive order issued by a court of competent jurisdiction is actionable as contempt of court. *Howat v. Kansas,* 258 U.S. 181, 189–190, 42 S.Ct. 277, 280–281, 66 L.Ed. 550 (1921); *Kendrick v. Bland,* 740 F.2d 432, 439 (6th Cir.1984); *accord, Newman v. Graddick,* 740 F.2d 1513 (11th Cir.1984); *Newman v. Alabama,* 683 F.2d 1312, 1318 (11th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983).

"Broadly speaking, a civil contempt is a failure of a litigant to do something ordered to be done by a court in a civil action..." *Walling v. Crane,* 158 F.2d 80, 83 (5th Cir.1946). Civil contempt, where appropriate, serves "to preserve and enforce the rights of private parties to suits, and compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the Court has found them to be entitled ..." *Mobile County Jail Inmates v. Purvis,* 551 F.Supp. 92, 96 (S.D.Ala.1982), *aff'd,* 703 F.2d 580 (11th Cir.1983), *quoting Palmigiano v. Garrahy,* 448 F.Supp. 659, 670 (D.R.I.1978) (citations omitted).

■ Plaintiffs seeking sanctions for civil contempt are held to proving noncompliance by "clear and convincing" evidence. *United States v. Rizzo,* 539 F.2d 458, 465 (5th Cir.1976); *Newman v. Graddick,* 740

F.2d at 1528. Further, "[w]hile the defendants herein are not held to 'absolute compliance' with the Court's order, ... the Court looks to see whether the defendants took 'all the reasonable steps within their power to insure compliance with the orders,'" *Mobile County Jail Inmates,* 551 F.Supp. at 97, *quoting Sekaquaptewa v. MacDonald,* 544 F.2d 396, 406 (9th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). Finally, since willfulness is not an element of civil contempt, the defendants' intent is not in issue in this case. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).

■ While it appears that the defendants have come into compliance with the Court's staffing order with respect to the funding and hiring of sergeants as well as the post order requiring hourly visual inspection of each inmate cell, the Court finds that the defendants are not in compliance with the December 1984 Order as it applies to the funding and hiring of deputies, a highly critical requirement of that order. The Court finds further from the evidence presented that there is a high probability and, indeed, a virtual certainty that defendants will persist in their noncompliance unless the Court takes coercive measures. Additionally, the Court is forced to conclude that defendants clearly failed to undertake all "reasonable and necessary" steps towards compliance, and that none of the reasons advanced by the defendants in support of their position relate to an inability to comply. The defendant Commissioners have admitted by their own testimony that they have both the authority and the financial resources to allocate monies in order to fund the necessary deputy positions. This they did not do. While the Court recognizes that the defendant Sheriff does not have such funding authority, it is the defendant Sheriff's obligation to submit to the Commissioners the necessary requests for guard funding to satisfy the Court order as well as to accomplish the necessary screening, hiring and training af-

ter the positions are authorized.[6] No such requests were made by defendant Klevenhagen. In short, the Court, concluding that plaintiffs have satisfied their burden of proof, finds the defendants Sheriff and County Commissioners to be in civil contempt and that coercive sanctions are mandated.

When shaping such sanctions, it has been held that a court should take into account "the character and magnitude of the harm threatened by the continued contumacy", "the probable effectiveness of [the] suggested sanction in bringing about the result desired," and "the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *See United States v. United Mine Workers*, 330 U.S. 258, 303–304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). In light of the motives of defendants for disobedience of the Court's Order and the facts and circumstances of this case, it is the view of the Court that the following coercive sanctions should be applied:

### A.

Defendants will have fourteen (14) days from this date, May 24, 1985, or until Friday, June 7, 1985 at 3 p.m. to purge themselves of civil contempt by accomplishing the following:

1. File a detailed staffing plan with the Court to hire and train and put to work the necessary jail guards in order to meet the requirements of the December 18, 1984 Order. Such staffing plan will be fully accomplished and operational within five (5) months of June 7, 1985 or by November 7, 1985. The implementation of the staffing plan will be planned so that increments of approximately twenty (20%) percent of the total guards needed to satisfy the Court Order will be fully trained and at

work on the jail floors at the end of each of the five monthly periods; *and*

2. Deposit in the registry of the United States District Court in Houston ten (10%) percent of a *conditional* lump sum fine of $250,000 or $25,000; *and*

3. Deposit in the registry of the United States District Court the additional sum of $30,000 to be expended as needed to pay the fees and expenses of outside monitors. In view of the nature and extent of the contempt of the defendants, additional monitoring will be necessary over the five (5) month period during which the required guards are being hired, trained and put to work. The Court designates the Benton-Stoughton team of penologists whose views the Court relied upon in issuing its December 18, 1984 Order to observe implementation of the staffing plan under the direction of the defendant Sheriff and to advise and report to the Ombudsman, James Oitzinger.

### B.

At the 14 day hearing to be held at 2 p.m. on June 7, 1985 the Court will determine the following:

1. Whether the staffing plan set out in A(1) above has been filed; *and*

2. Whether there has been deposited in the registry of the Court $25,000 or 10% of a *conditional* lump sum fine of $250,000, as set out in A(2) above; *and*

3. Whether there has been deposited in the registry of the Court $30,000 to be expended as needed to pay the fees and expenses of outside monitors over a five (5) month period while the staffing plan is being implemented as set out in A(3) above.

---

**6.** The Court's view in this regard is not altered by the fact that Sheriff Klevenhagen was not personally involved in defendants' compliance efforts until January 1985, as the inevitable succession of officials in public office does not

excuse noncompliance. *Newman v. Graddick*, 740 F.2d at 1517, 1518 (11th Cir.1984); *See Ranson v. Brennan*, 437 F.2d 513, 516 (5th Cir.), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); FED.R.CIV.P. 25(d)(1).

Based upon the Court's determination on June 7, 1985 of the defendants' course of action in satisfying all of the above requirements in order to purge themselves of civil contempt, the following self-executing sanctions are triggered:

1. If the Court determines that defendants have not filed the designated staffing plan *or* that defendants have not deposited in the Court registry 10% or $25,000 of a *conditional* lump sum fine of $250,000 *or* that defendants have not deposited in the Court registry the additional sum of $30,000 for use as needed for the fees and expenses of the temporary outside monitors, then defendants will be fined $10,000 per day commencing June 7, 1985 until full compliance with the above requirements and full compliance with the December 18, 1984 Order are achieved.

2. If the Court determines that defendants have filed the designated staffing plan *and* that defendants have deposited in the Court registry 10% or $25,000 of a *conditional* lump sum fine of $250,000 *and* that defendants have deposited in the Court registry the additional sum of $30,000 for use as needed for the fees and expenses of the temporary outside monitors, then the Court will levy a *conditional* $7500 a day fine during the five month period that the staffing plan is being implemented (June 7, 1985 to November 7, 1985), said total amount of *conditional* daily fines not to be paid until November 7, 1985.

A. If on November 7, 1985 the staffing plan is fully implemented with the required guards hired, trained and at work, the *conditional* fines—the $250,000 lump sum fine including the 10% deposit of $25,000 and as well as the accrued daily fines of $7500 per day—will be waived by the Court and fully returned to defendants. Also, any unused expenditures for the temporary monitors will be returned to the defendants along with an accounting.

B. If on November 7, 1985 the Court ordered staffing plan is not fully implemented and operational, the total *conditional* lump sum fine of $250,000 and the *conditional* $7500 daily fines assessed over the five month period totaling $1,125,000 will be immediately due and payable and deposited in the registry where it will be forfeited to the Court and subject to court order. Failure of the defendants to deposit such forfeited *conditional* fines on November 7, 1985 as ordered will result in a late penalty of $5000 per day until such forfeited fines are deposited. In addition, the defendants will be fined $10,000 a day from November 7, 1985 forward until full compliance with the December 18, 1984 Order is achieved.

## III.

### *Conclusion*

This Court has acted to hold these elected officials of Harris County, Texas in civil contempt with great reluctance, and only after conducting several hearings over a period of many months. The history of this litigation reveals the unconscionable period of time that the Harris County Jails have confined inmates while utilizing an inadequate number of security guards. For this Court to do nothing and thereby permit this practice to continue would be a total abdication of the Court's obligations under the applicable law. The defendants' indifference to the Court's December 18, 1984 Order is the most striking and disturbing proof of the defendants' lack of reasonable diligence. Even after all efforts at the appellate level to stay the enforcement of the December 18, 1984 Order had been exhausted without success, the Commissioners evidenced no willingness to comply. Instead, they chose to rely solely on their own assessment as to what constitutes a safe and suitable jail. Such deliberate inaction strongly influences the Court's view that defendants have not been reasonably diligent in complying or even attempting to comply with the Court's mandate.

As a final observation, the following quotation is inserted as a means of underscoring the Court's stance in this case:

For twelve years this protracted civil rights litigation has proceeded to address in the Court a myriad of issues relevant to the Harris County Jails. It had been hoped by this Court that some termination point might be in the offing. Nothing can do more to delay such a termination than scenarios such as the one addressed in this order. The Court has a duty to ensure that the inmates in the Harris County Jails are not deprived of their constitutional right to be protected from cruel and unusual punishment. While the Court realizes that any resulting potential tax increases or fines will ultimately be borne by the citizens of Harris County, the Court outlines the above procedure in order to serve notice to the defendants that the Court, either coercively or coactively, intends to ensure that the staffing of the county jails comports with what the Constitution requires.

*Alberti v. Heard,* 600 F.Supp. 443 at 464 (S.D.Tex.1984).

In the event that any of the foregoing Findings of Fact constitute Conclusions of Law, they are adopted as such. In the event that any of the foregoing Conclusions of Law constitute Findings of Fact, they are adopted as such.