**Helen D. WOODSON, Father Carl Kabat, Father Paul Kabat, Christopher Union, Sandra Mitchell, Larry Cloud Morgan, Leslie A. Cottrill, on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Owen L. SULLY, individually and in his official capacity as Sheriff of Wyandotte County, Kansas, and his agents, subordinates and employees, and the Board of County Commissioners of the County of Wyandotte, Defendants.**

No. 85–3049–S.

United States District Court,
D. Kansas.

Sept. 8, 1992.

---

David J. Waxse, Shook, Hardy & Bacon, Overland Park, Kan., Claudia J. York, Shughart, Thomson & Kilroy, Kansas City, Mo., Larry Rute, Kansas Legal Services, Topeka, Kan., American Civ. Liberties Union of Western Missouri by David R. Morris, General Counsel, Overland Park, Kan., for plaintiffs.

James R. Goheen/Jeanne Gorman Rau, McAnany, Van Cleave & Phillips, P.A., Donald C. Long, Kansas City, Kan., for defendants.

Gerald Golden, Kansas City, Kan., for Owen L. Sully.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

Before the court is a proposed Amended Consent Judgment and Decree which is submitted for the court's approval. The proposed order amends the Consent Judgment and Decree, dated March 30, 1987, in which the parties agreed to build and operate a new county jail under the terms and conditions set forth in that agreed order.

*Factual Background*

This action began in 1985 with a class action suit filed by prisoners in the Wyandotte County Jail who alleged their conditions of confinement were unconstitutional. The defendants are the Board of County Commissioners of Wyandotte County and the three individual commissioners (hereinafter referred to as "defendant Board"), and the Sheriff of Wyandotte County. In 1987, the parties negotiated a stipulated

Consent Judgment and Decree under which a new county jail facility was to be constructed. Additionally, the agreed order set forth provisions to govern management of the new facility. On March 30, 1987, this court approved and adopted the Consent Judgment and Decree. By the terms of the agreed order, this court was to have continuing jurisdiction for one year following the occupation of the newly constructed jail, at which time the case could be dismissed by agreement of the parties "[i]f the defendants are in satisfactory compliance with all the terms and conditions of [the consent judgment and decree] at that time." (Consent Judgment and Decree, p. 11.) Until that time, defendants were to file quarterly reports on the progress towards compliance with the consent decree. The last quarterly report filed with the court was dated November 13, 1990. The transition to the new facility was completed March 30, 1990. Defendant Board states no agreed order of dismissal was entered one year later because there was not satisfactory compliance with the consent decree at that time.

After lying dormant since November 1990, this matter was reopened in March 1992 when defendant Sheriff filed a motion for a temporary restraining order. The Sheriff complained that defendant Board was proposing to interfere with the Sheriff's ability and authority to operate the jail in a constitutional manner and in compliance with the Consent Judgment and Decree. Defendant Sheriff later withdrew his motion, and indicated the parties were in serious and constructive dialogue to resolve present problems regarding the operation of the jail.

The court scheduled a hearing to determine the status of the action and what, if any, action needed to be taken in this matter. Prior to the hearing, all parties met to fashion a proposed amended agreement that would govern the future operation of the facility. It appears this discussion was fueled by the recognition of all parties that the new jail is not being operated in compliance with the Consent Judgment and Decree. Particularly, it appears the provisions regarding the level of staffing and the training of the staff have not been followed.

The resulting proposed Amended Consent Judgment and Decree before the court is submitted by plaintiffs and defendant Board. Defendant Sheriff objects to those portions of the proposed agreement which create a Jail Control Authority to oversee operation of the jail, and which provide for the hiring of a Jail Administrator to be in charge of the daily operation of the county jail facility. The Jail Administrator would serve at the pleasure of the Jail Control Authority, of which defendant Sheriff is one of six voting members. Defendant Sheriff claims these provisions are in direct conflict with Kansas state statutes which make the Sheriff responsible for operation of the county jail. Defendant Sheriff indicates he would support the proposed amended order if it is changed to have the Jail Administrator appointed by the Sheriff with the consent of the Jail Control Authority, and that the Jail Administrator serve under the direction of the Sheriff.

### Discussion

■ Under Kansas statutes, the county sheriff is clearly responsible for keeping the county jail.[1] The board of county commissioners is to provide reasonable funds for keeping such prisoners.[2] Courts have recognized a sheriff's exclusive and absolute authority as provided in state statutes, but have held the county liable for actions or inactions of the sheriff under that authority. *See e.g., Lucas v. O'Loughlin,* 831 F.2d 232, 235 (11th Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d

---

**1.** "The sheriff of the county by himself or deputy shall keep the jail and shall be responsible for the manner in which the same is kept. He shall keep separate rooms for the sexes, except where they are lawfully married. He shall supply proper bread, meat, drink, and fuel for the prisoners." K.S.A. 19–1903.

**2.** "When a prisoner is committed to a county jail in a criminal action, the board of county commissioners shall allow the sheriff reasonable charges for maintaining such prisoner." K.S.A. 19–1910(a).

909 (1988), and cases cited therein. *See also, Eames v. Board of County Com'rs of Phillips County, Kan.,* 733 F.Supp. 322, 324 (D.Kan.1990) (county commissioners liable for negligence of sheriff and deputies); *Albro v. County of Onondaga, N.Y.,* 627 F.Supp. 1280, 1288 (N.D.N.Y.1986) (sheriff accountable for unconstitutional conditions, county must accept primary responsibility). This statutory scheme gives rise to understandable tensions between the Board of County Commissioners and the County Sheriff, as evidenced in the present case.

Defendant Board argues the proposed amended consent decree complies with state statutes. Defendant Board's statutory analysis relies on language found in other Kansas statutes which defendant Board uses to indicate the sheriff does not have exclusive control over all prisoners.[3] Defendant Board also points to the statutory provision for a matron who is charged by statute with the care of women prisoners.[4] Finally, defendant Board cites statutes which make the Board of County Commissioners responsible for control of county expenditures.[5] The court is not persuad-

ed by these arguments. To the extent the proposed Jail Control Authority and Jail Administrator exceed advisory status, such entities clearly extend into the state statutory duties and responsibilities of the sheriff. Thus, the court finds the proposed Amended Consent Judgment and Decree, if approved, would not be authorized under Kansas law.

Plaintiff class and defendant Board rely heavily on their assessment that defendant Sheriff is responsible for the noncompliance with the original Consent Judgment and Decree,[6] and argue the court has broad equitable power to fashion a remedy that addresses the problem. They argue the proposed amendment to the original consent decree is appropriate and within the court's remedial authority because the creation of the Jail Control Authority and Jail Administrator address the specific problems created by the inaction of the current sheriff.

■■■ The court recognizes its obligation to fashion appropriate remedies for

---

**3.** K.S.A. 19–1930(a) and (b) read in part: "The sheriff *or the keeper* of the jail in any county of the state shall receive all prisoners committed to the sheriff's *or jailer's* custody...." (emphasis added), and section (e) reads in part "If any sheriff *or jailer* neglects or refuses to perform the services and duties required by the provisions of this act, the sheriff *or jailer* shall be subject to the same penalties ..." (emphasis added).

The court finds the use and context of the word "jailer" in K.S.A. 19–1930 is consistent with the operation of a jail under a consolidated law enforcement agency, wherein the sheriff's authority and responsibilities (such as operating the jail) are specifically limited by statute. See K.S.A. 19–4413 and 4416. There is no indication that Wyandotte County is part of a such a consolidated law enforcement agency.

*See also,* K.S.A. 19–811 which reads: "The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, *or by his deputy or jailer,* for whose acts he and his sureties shall be liable" (emphasis added). The use and context of the word "jailer" in this statute clearly indicates that a "jailer" works under the sheriff, and that the sheriff is liable for the jailer's actions.

**4.** "That the board of county commissioners of any county in this state may upon the nomination and recommendation of the sheriff of the

county appoint and confirm a competent woman to be matron of the county jails of such county, and define her duties, and fix her compensation." K.S.A. 19–901.

K.S.A. 19–902, however, expressly specifies that the matron is considered part of the sheriff's force, and has the authority delegated to a *deputy* sheriff. Thus, the court does not find the sheriff's primary control is defeated by a statute that provides for the appointment of a matron.

**5.** As acknowledged by defendant Board, the broad authority of the Board of County Commissioners is subject to statutes which apply uniformly to all counties. K.S.A. 19–101a(a)(1). Such uniformly applicable statutes appear to include K.S.A. 19–811 and 19–1903, which make the sheriff responsible for operating and managing the county jail.

**6.** The court notes the lengthy period of inaction and noncompliance cited against defendant Sheriff. Defendant Sheriff's deposition testimony demonstrates to the court that compliance with the 1987 Consent Judgment and Decree has not been a compelling priority for this Sheriff. The court further notes that prior to the Sheriff's request for a temporary restraining order in March 1992, no party sought relief from this court to enforce the terms of the Consent Judgment and Decree.

constitutional violations. *Milliken v. Bradley (Milliken II)*, 433 U.S. 267, 280, 97 S.Ct. 2749, 2757, 53 L.Ed.2d 745 (1977). *See e.g., Tillery v. Owens*, 907 F.2d 418, 431 (3rd Cir.1990) ("The district court is entitled to require immediate correction of those conditions that it finds to contribute most significantly to the constitutional violations identified and that it determines can be most readily remedied"). The court further recognizes that limitations imposed by state law do not necessarily defeat this court's jurisdiction to fashion required remedies for constitutional violations. *Milliken v. Bradley (Milliken I)*, 418 U.S. 717, 744, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974). Where it is found that a particular remedy is required to vindicate constitutional guarantees, the federal courts can set aside state-imposed limitations that operate to prevent compliance with the United States constitution. *Missouri v. Jenkins*, 495 U.S. 33, 57–58, 110 S.Ct. 1651, 1666–1667, 109 L.Ed.2d 31 (1990). *See also, Stone v. City and County of San Francisco*, ·968 F.2d 850 (9th Cir.1992) ("While there are federalism concerns in institutional reform litigation involving correctional facilities, they do not automatically trump the powers of the federal courts to enforce the Constitution or a consent decree").[7] However, to approve a remedy that sets aside state law, this court must assure itself that "no permissible alternative" can accomplish the required task. *Missouri v. Jenkins*, 495 U.S. at 51, 110 S.Ct. at 1663. The use of a court's equitable remedial power must be tempered by a "proper respect for the integrity and function of local government institutions." *Id.* Remedies must be fashioned with minimum intrusion into the affairs of local officials. *Kendrick v. Bland*, 740 F.2d 432, 438 (6th Cir.1984). Only when the least intrusive remedy fails to work should the court exercise more comprehensive equitable relief. *Inmates of the Allegheny County Jail v.*

*Wecht*, 699 F.Supp. 1137, 1146–47 (W.D.Pa. 1988).[8]

Rule 60(b) of the Federal Rules of Civil Procedure applies to modification of the terms of a consent decree. *Rufo v. Inmates of Suffolk County Jail*, — U.S. —, —, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992). The flexible standard to be applied to consent decrees governing prisons or jails requires the party seeking modification to establish a significant change in facts or law. *Rufo*, — U.S. at —, 112 S.Ct. at 760; *Diaz v. Romer*, 961 F.2d 1508, 1511 n. 2 (10th Cir.1992). In the present action, it is clear the proposed modification to the original consent decree is based upon the fact that the jail is presently not operating in compliance with the Consent Judgment and Decree. It appears undisputed that staffing levels, and the training of the staff, do not comply with the standards set forth in the 1987 agreed order, and that population control limits have not been followed. Some remedy must be employed where those responsible for unconstitutional conditions refuse to act. *Albro*, 627 F.Supp. at 1288.

Finding the standard for modification satisfied, the court must "consider whether the proposed modification is suitably tailored to the changed circumstances." *Rufo*, — U.S. at —, 112 S.Ct. at 760. In the present case, the proposed creation of a Jail Control Authority and a Jail Administrator clearly is tailored to bring the Wyandotte County Jail into compliance under the consent decree. The court's inquiry into "suitability," however, must go one step further, given the above cited standards counseling judicial restraint in the light of federalism concerns. Exercising such restraint, the court finds the proposed Amended Consent Judgment and Decree involves too great an intrusion of this court into the management of Wyandotte County, especially where all parties are not in agreement and the proposed

---

7. *Stone, amended,* July 9, 1992, without change to passage quoted above.

8. *See also, Stone, supra,* wherein the district court overrode state-law in authorizing the sheriff to release prisoners as a way of solving problems of prison overcrowding. The Ninth Circuit Court of Appeals did not rule out that

such remedy may be necessary in the future, but found such state-law-override provisions should be considered only "[i]f the threat of *contempt sanctions proves ineffective and if the district court finds other alternatives* inadequate." 1992 WL 158216 at page 12.

modification is not authorized under state statutes.

Instead, the court will consider monitoring defendants' compliance by use of an appointed monitor or special master. The court will also consider use of its contempt power, if necessary, to force compliance with the terms of the Consent Decree and Judgment. *See e.g., Kendrick,* 740 F.2d at 439 (appointment of monitor and contempt proceedings detailed as lesser intrusive remedies to district court's temporarily pragmatic remedy of enjoining prison staff from performing certain responsibilities of employment delegated to them by the state). *See also, Glover v. Johnson,* 934 F.2d 703 (6th Cir.1991) (contempt order and appointment of special administrator to develop remedial plan is not excessively intrusive remedy for defendants' noncompliance with agreed order regarding conditions and programming in state prisons).

The court, therefore, will not approve the proposed Amended Consent Judgment and Decree. The court grants all parties fifteen days from the date of this order to show cause why the 1987 Consent Decree and Judgment should not be modified to provide for the appointment of a special master to monitor defendants' compliance with the consent decree, with cost of the monitoring to be charged to Wyandotte County.

IT IS SO ORDERED.